IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| **CURTIS JACKSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08-2652 |
| ) | |
| **VALERO REFINING COMPANY –** ) | |
| **TENNESSEE, LLC d/b/a VALERO** ) | |
| **MEMPHIS REFINERY,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant Valero Refining Company – Tennessee, LLC's ("Valero") January 25, 2010, Motion for Summary Judgment. (See Dkt. No. 18.) Plaintiff Curtis Jackson responded in opposition on February 16, 2010, and Valero replied on February 25, 2010. (See Dkt. Nos. 19, 22.) Jackson alleges that Valero discriminated against him because it regarded him as having a disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2)(C) (2006). Because Valero's view of Jackson's abilities was not mistaken and because it did not regard Jackson as disqualified from holding a broad range of jobs, the Court GRANTS Defendant's Motion for Summary Judgment. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999), superseded prospectively by

statute, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, as recognized in Milholland v. Sumner County Bd. of Educ., 569 F.3d 562, 565 (6th Cir. 2009.)

## I. FACTUAL BACKGROUND

Unless otherwise stated in this Order, all facts discussed are undisputed for purposes of the Motion for Summary Judgment. Valero and its predecessors in interest have employed Jackson at their Memphis refinery since September 12, 1988. (Defendant's Statement of Undisputed Material Facts ¶ 54.) ("Def's SOF") In September 2006, Jackson held the position of "Assistant Operator – Hydroplex." (Id. ¶ 2.) Around this time, he began to experience muscle spasms in his shoulder and neck and numbness in his left hand. (Plaintiff's Answer to Defendant's Motion for Summary Judgment ¶ 5.) ("Pl's SOF") Jackson's physician, Dr. James Rodney Feild, sent a letter to Valero dated September 6, 2006, excusing Jackson from work. (Def's SOF ¶ 1.) The letter noted that Jackson had complained of "neck and shoulder pain lifting objects of 20 to 25 pounds plus over his head . . . [and] is not able to climb tall structures 20 to 40 feet in height." (Id.) Feild recommended that Jackson "should be totally off work for six months" from July 2006.[1] (Id. ¶ 3.) Jackson's own application for leave stated that he intended to

---

[1] The record does not reveal why Feild backdated the date Jackson should cease working to July 2006.

2

return to work by February 18, 2007 – later than six months from July 2006. (Id. ¶ 4.) Jackson explained that he was the one to decide when he could come back to work because he was familiar with his condition and how it affected his body. (Pl's SOF ¶ 5.)

As February 2007 approached, however, Jackson determined that he was not yet well enough to return to work. (Def's SOF ¶ 6.) He submitted to Valero a January 24, 2007, note from Feild excusing him from work for thirty additional days and limiting his climbing for the following thirty days. Thus, Jackson's new return date was February 24, 2007. (Id.) In anticipation of his return, Valero scheduled a February 22, 2007, appointment with Dr. Claiborne Christian for an independent medical examination. (Id. ¶ 9.) Jackson did not appear for the appointment, but did appear at a rescheduled February 27 examination. (Id. ¶¶ 10-11.) Christian referred Jackson to David Brick, an occupational therapist, for a functional capacity evaluation. Jackson underwent the evaluation with Brick on February 28, 2007. (Id. ¶ 12.) Brick's evaluation took two and one-half hours. (Id. ¶ 13.)

Christian evaluated Brick's conclusions and issued his final report on March 6, 2007. (Id. ¶ 14.) He met with Jackson on the same day to review the results. Christian concluded that Jackson had "some weakness in his left upper extremity and he

3

also has some functional deficits as it relates to knee flexion, squatting, lifting and climbing." (Id. ¶ 16.) Consequently, Christian did not recommend a return to full duty and placed restrictions on any work Jackson might perform. (Id. ¶¶ 15, 17.) Christian limited Jackson to lifting 50-75 pounds only occasionally. Jackson also could not repetitively lift more than 25 pounds, climb a ladder, repetitively bend and squat, or lift anything overhead. (Id. ¶ 17.) Because of the breadth of the restrictions, Christian concluded that it would be difficult for Jackson to return to his previous position.[2] (Id. ¶ 19.) Brick also concluded that Jackson should not return to his regular work duties. (Id. ¶ 20.)

The published requirements for Jackson's position as an assistant operator – hydroplex included the ability to walk on uneven surfaces; occasional overhead work; lifting up to fifty pounds frequently; frequent lifting from the ground to knees, waist, and shoulder; frequent ladder climbing; and frequent walking up and down stairways. (Id. ¶ 21.) After receiving Christian's report, Valero determined that Jackson could not meet the physical requirements of his prior position. (Id. ¶ 22.) Mike Sracic, the human resources director for Valero's Memphis refinery, and Gary Byrd, Valero's regional director of

---

[2] Although Jackson challenges Christian's conclusion that he could not return to his former job, Jackson does not dispute that this was the doctor's conclusion. (Pl's SOF ¶ 19.)

4

human resources - refinery operations, met with Jackson on March 20, 2007, and told him that, based on Christian's and Brick's examinations, he could not return to work as an assistant operator. (Id. ¶¶ 23-24.) Jackson requested that Valero allow him to work as a maintenance helper, carpenter, or in a warehouse or lab position. (Pl's SOF ¶ 27.) Byrd informed Jackson that there were no openings in any of those positions or any other operations or maintenance jobs that he could perform with his work restrictions. (Def's SOF ¶ 25.) Valero then provided Jackson with an application for long-term disability benefits. (Id. ¶ 31.)

Jackson applied for disability benefits on April 11, 2007. When asked to explain why he could not work in his previous occupation, Jackson answered, "I am in good physical condition and can work in my occupation," reflecting his belief that he was now ready to return to work despite Christian's findings. (Id. ¶ 35.) The insurance carrier, unsurprisingly, denied Jackson's claim. (Id. ¶ 37.) Unable to return to work or obtain disability benefits, Jackson asked his employer to fire him so that he could access his 401(k) funds and provide for his family. (Pl's SOF ¶ 32.) Valero declined to terminate his employment. (Def's SOF ¶ 32.)

On April 4, 2007, Jackson delivered a letter from his personal physician, Dr. Feild, to Valero stating that he could

5

return to work with no restrictions. (Id. ¶ 38.) Valero contacted Feild and learned that his examination of Jackson had been cursory, taking only thirty minutes. (Id. ¶ 39; Jackson Dep., Dkt. No. 18-3, at 135:16-24.) Feild was also unaware of the restrictions Christian had recommended. (Def's SOF ¶ 39.) At Valero's request, Christian sent his report to Feild for review. (Id. ¶ 40.) Feild informed Valero in writing on May 16, 2007, that he agreed with Christian's findings and concurred in the work restrictions. (Id. ¶ 41.) He confirmed his agreement with Christian's recommendations by facsimile on May 23, 2007. (Id. ¶ 42; see Dkt. No. 18-4, Exh. 24.)

Jackson filed for unemployment benefits on May 14, 2007. (Def's SOF ¶ 47.) The notice Valero received stated that Jackson claimed "HE QUIT HIS JOB DUE TO MEDICAL REASONS."[3] (Id.; see Sutphin Aff., Dkt. No. 18-5, Exh. 6.) Jackson's union filed a grievance on his behalf on May 25, 2007, asking that Valero allow Jackson to return to work. (Def's SOF ¶ 44.) Valero and the union reached an agreement that Jackson could return to work on October 8, 2007, if he obtained medical certification that he could perform all of the essential functions of his job. (Id. ¶ 45.) Jackson reported for his medical examination in October and was cleared to return to work without restriction. (Id. ¶

---

[3] Jackson disputes that he told Tennessee Department of Labor and Workforce Development that he quit for medical reasons, but he does not dispute that the notice Valero received from the state contained this notation. (Pl's SOF ¶ 47.)

6

48.)  He reported to work on October 8, and Valero assigned him to his former position as assistant operator – hydroplex.  (Id. ¶ 49.)  After his return, Jackson successfully gained a transfer from the hydroplex and now holds the position of Assistant Operator – Sulfur Unit at Valero's Memphis refinery.  (Id. ¶ 51.)

Jackson filed suit pro se on September 19, 2008, alleging that Valero had violated the ADA by failing to allow him to return to work on April 4, 2007.  (Compl. ¶ 10.)  He seeks back pay and all other allowable damages.  (Id. ¶ 12.)  On August 27, 2009, attorney James R. Becker, Jr. made an appearance on behalf of Jackson.  (See Dkt. No. 16.)  Valero's pending Motion for Summary Judgment tests the trial-worthiness of Jackson's suit.

## II.  JURISDICTION AND STANDARD OF REVIEW

This Court has original jurisdiction over Plaintiff's federal claims under the general federal question jurisdiction provided by 28 U.S.C. § 1331.

Under Federal Rule of Civil Procedure 56, the party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986).  The moving party can meet this

burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmovant must present "concrete evidence supporting . . . [his] claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in his favor. See id. "Summary judgment is an integral part of

burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmovant must present "concrete evidence supporting . . . [his] claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in his favor. See id. "Summary judgment is an integral part of

the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

### III. ANALYSIS

Jackson alleges that Valero's refusal to reinstate him by April 4, 2007, violated the ADA. Specifically, Jackson asserts that Valero impermissibly regarded him as disabled in the major life activity of working. (Pl's SOF at 8.) Valero asserts that it never mistakenly regarded Jackson as disabled and, because it based its work restrictions on the advice of physicians, including Jackson's personal physician, it cannot be found liable. (Defendant's Memorandum of Facts and Law in Support of Its Motion for Summary Judgment at 8-10.)

To establish a valid claim under the ADA, a claimant must first demonstrate that he has a qualifying disability; and "[i]t is well-settled that not every physical or mental impairment constitutes a disability under the specific parameters of the ADA." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 704 (6th Cir. 2008) (citations omitted). A plaintiff may establish that he has a qualifying disability if he has 1) "a physical or mental impairment that substantially limits one or more of [his] major life activities"; 2) a record of having such impairment;

9

or 3) an employer who regards him as having such impairment. 42 U.S.C. § 12102(2)(A)-(C) (2006). Because Jackson brings his claim under the third, "regarded as" prong, he must prove that his employer either 1) "mistakenly believes that [he] has a physical impairment that substantially limits one or more major life activities" or 2) "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities."[4] Sutton, 527 U.S. at 489. This mistaken belief on the employer's part must also lead it to believe that the employee is "precluded from more than one type of job, a specialized job, or a particular job of choice." Id. at 492. The employer must believe that the employee is ineligible to perform a broad range or class of jobs. 29 C.F.R. § 1630.2(j)(3)(i); Sutton, 527 U.S. at 491; Daugherty, 544 F.3d at 704.

The "regarded as" prong separates the ADA from other civil rights statutes because it protects people who are not disabled and "are perfectly able to perform a job, but are rejected . . . because of the myths, fears, and stereotypes associated with disabilities." Gruener v. Ohio Cas. Ins. Co., 510 F.3d 661, 664

---

[4] The ADA Amendments Act of 2008 modified these requirements by removing the requirement that the impairment limit a "major life activity." See 42 U.S.C. § 12102(3)(A) (2010). However, because the actions giving rise to Jackson's claim occurred before the ADA Amendment Act's effective date of January 1, 2009, the prior version of the ADA and the case law interpreting it control. See Milholland, 569 F.3d 562, 567 (holding that "the ADA Amendments Act does not apply to pre-amendment conduct"); EEOC v. Burlington N. & Santa Fe Ry., 621 F. Supp. 2d 587, 593 n.3 (W.D. Tenn. 2009) (same).

10

(6th Cir. 2008) (internal quotation marks and citations omitted, omission in original). Rather than solely examining the abilities of the employee, it also focuses on the employer's state-of-mind. Ross v. Campbell Soup Co., 237 F.3d 701, 706 (6th Cir. 2001). The Sixth Circuit has described the claim advanced by Jackson – that his employer mistakenly regarded him as disabled from working – as approaching "the farthest reaches of the ADA." Id. at 709. Because an employee must provide evidence of the employer's subjective state-of-mind to succeed, he faces an "extraordinarily difficult" task in proving his claim. Id. "[E]mployers do not regularly consider the panoply of other jobs their employees could perform, and certainly do not often create direct evidence of such considerations." Id. However, if an employee can demonstrate that his employer acted because of stereotypes rather than facts, an employee's claim will survive summary judgment. See id. at 706-708 (where employee was "otherwise qualified to perform his job" and employer terminated him after a series of memoranda referring to him as the "back case" and an unexplained decision to dramatically raise his sales quotas, claim was trial-worthy).

### A. Valero Was Not Mistaken About Jackson's Status

The initial requirement to succeed in a regarded-as-disabled claim is that the employer must have been mistaken in its belief about the employee's physical abilities. Sutton, 527

11

U.S. at 489 ("[I]t is necessary that a covered entity entertain misperceptions about the individual."); Daugherty, 544 F.3d at 704 (same). Where an employer places restrictions on an employee's work that track those recommended by a physician, an employer does not entertain "mistaken" perceptions of the employee's abilities. Gruener, 510 F.3d at 665 (holding that, when work restrictions "simply tracked the specific and valid restrictions prescribed by her own doctor," an employee does not have a valid "regarded as" claim); Mahon v. Crowell, 295 F.3d 585, 592 (6th Cir. 2002) (employer is "not wrongly viewing [an employee] through a stereotype of disability," when it follows a physician's recommendations); Cannon v. Levi Strauss & Co., 29 F. App'x 331, 336 (6th Cir. 2002) (rejecting regarded-as claim where "Levi's did not view [plaintiff] through stereotypes based on her impairment but rather followed the specific recommendations of her treating physician, the course the Supreme Court says is the correct one" (citation omitted)).

Here, it is undisputed that Valero relied on Christian's recommendations in placing restrictions on Jackson's work that made him ineligible to return to his prior job. (Def's SOF ¶¶ 22, 24.) When Jackson informed Valero on April 4, 2007, that his personal physician Feild had cleared him to return to work without restrictions, Valero inquired into Feild's findings. (Def's SOF ¶¶ 38, 40.) On learning that Feild's examination had

12

only taken thirty minutes, Valero allowed him to see the report documenting Christian's 2.5 hour examination. (Id. ¶¶ 39-40.) Feild concurred in Christian's findings after reviewing the results of the independent medical examination. (Id. ¶¶ 41-43.) Thus, every medical professional and occupational therapist Valero had contacted, including Jackson's own treating physician, concluded that he could not return to the position of assistant operator – hydroplex. Cf. Burlington Northern, 621 F. Supp. 2d at 595-96 (refusing to grant summary judgment for employer where employer relied on physicians other than the employee's treating physician and those doctors "had never seen or examined [the employee]"). When a medical examination revealed that Jackson was again fit to return to his prior position, Valero promptly reinstated him. (Def's SOF ¶¶ 48-49.)

Jackson attempts to raise a disputed issue of material fact by arguing that, although the doctors based their opinions on the job description Valero provided, the official description did not accurately state what Jackson actually did. (Pl's SOF at 10.) Jackson asserts that he rarely had to lift objects over his head and has "not had to climb a tower 240 feet [tall] in more than 15 years." (Jackson Aff., Dkt. No. 18-1, ¶¶ 7-15; Pl's SOF at 9-10.) Any heavy lifting or arduous climbing could be performed by others. (Jackson Aff. ¶ 23.) However, in his earlier deposition, Jackson said otherwise. When handed a copy

13

of the published job description for assistant operator – hydroplex and asked whether the physical duties listed were those he had to perform, Jackson responded "Correct." (Jackson Dep. at 64:16-22.) The physical requirements listed included frequent lifting of 10 to 50 pounds; occasional overhead work; frequent lifting from the ground to one's knees, waist, shoulders, and overhead; frequent climbing of ladders and stairs; and frequent walking on uneven, wet, and slippery surfaces.[5] (Assistant Operator Responsibilities, Dkt. No. 18-4, Exh. 6, at 1-2.) A party cannot create a genuine, disputed issue of material fact by contradicting his own prior sworn testimony with an affidavit filed after the opposing party has moved for summary judgment. Lanier v. Bryant, 332 F.3d 999, 1004 (6th Cir. 2003). Because Valero followed the uncontradicted advice of two physicians in refusing to reinstate Jackson until October 8, 2007, it was not mistaken in its perceptions; and Jackson cannot succeed on his regarded-as disability claim. See Gruener, 510 F.3d at 665; Mahon, 295 F.3d at 592; Cannon, 29 F. App'x at 336. Valero is entitled to summary judgment on Jackson's ADA claim.

---

[5] It is also undisputed that Jackson complained to Feild at the time of his initial examination of "neck and shoulder pain [from] lifting objects of 20 to 25 pounds plus over his head." (Def's SOF ¶ 1.) Jackson told Feild that he was "not able to climb tall structures 20 to 40 feet in height," demonstrating that climbing ladders was an integral part of Jackson's job. (Id.)

14

**B. Valero Did Not Regard Jackson as Ineligible to Perform a Broad Range or Class of Jobs**

Jackson also cannot succeed on his ADA claim because he cannot demonstrate that Valero regarded him as disabled from a broad class of jobs. See 29 C.F.R. § 1630.2(j)(3)(i); Sutton, 527 U.S. at 491. In Sutton, the Supreme Court held that twin sisters who were disqualified from serving as global airline pilots because of their "severe myopia" could not succeed on their regarded-as claims. Although the sisters could not serve as global pilots, they had not shown that United regarded them as unable to work as regional pilots or pilot instructors, both of which were included in the broad class of jobs encompassing global airline pilot. 527 U.S. at 493.

Here, Jackson inquired if he could return as a maintenance helper, carpenter, or in a warehouse or lab position. (Pl's SOF ¶ 27.) These positions are in the broad category of maintenance and operator jobs that include Jackson's original position of assistant operator - hyrdroplex. (Id.) Valero did not reject Jackson's request because it believed he could not perform any of the suggested jobs. It rejected Jackson's request because it had no open positions in those fields. (Def's SOF ¶ 25.) Jackson has failed to produce evidence suggesting that Valero considered him disqualified from a broad range or class of jobs. Therefore, even if Jackson could establish that Valero held

15

mistaken perceptions about his abilities, Valero would be entitled to summary judgment on Jackson's claim because it did not believe his limitations precluded him from working in a broad range of positions.  See 29 C.F.R. § 1630.2(j)(3)(i); Sutton, 527 U.S. at 491.  Valero's Motion is GRANTED.

**IV. CONCLUSION**

For the foregoing reasons, Valero's Motion for Summary Judgment on Jackson's regarded-as-disabled discrimination claim is GRANTED.

So ordered this 9th day of June, 2010.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE